The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and its Honorable Court. Good morning. Thank you very much. Please be seated. The first case we'll hear argument in is U.S. v. Pearson. Mr. Jankowski. Mr. Jankowski. Mr. Jankowski. Pleased to hear from you. Thank you, Your Honor. May it please the Court, good morning, Your Honors. My name is Vincent Jankowski. I represent Appellant Sheik Pearson before this Court today. If it pleases the Court, I would like to reserve five minutes of my time. You've reserved it. You have. We're asking the Court to vacate Mr. Pearson's sentence and to order resentencing of him, granting him a third-level reduction for acceptance of responsibility under Section 3E1.1b of the United States Sentencing Guidelines. Mr. Pearson was the least involved in this conspiracy. He had the least criminal record, yet he received the harshest sentence. He also received the brunt of the forfeiture. Don't you have – we have an alternate sentence in this case, correct? An alternate sentence by Judge Blake under the 3553A factor. Judge Blake did say that she would have ruled the same way if she had granted the reduction. Right. But in the interim, the United States Sentencing Commission has essentially lowered for virtually all drug offenses, has lowered the offense level by two levels. It doesn't matter, though, under Savignon-Mattoot and the Hargrove Court in this circuit, if there's an alternative sentence given, then there's harmless error review. In other words, we sort of, and at least for purposes, accept errors you suggest, and then we look at the sentencing under the 3553A factors. Isn't that correct? It would be but for the action of the Sentencing Commission. Why does that matter? Because – Why does that matter under Savignon-Mattoot and Hargrove? Why does that matter? Because he – under – after we're done here, Mr. Pearson will go back before the district court for resentencing. He will then – But not if we affirm on the alternate sentence. There won't be any other consideration of the guidance. Well, he would be entitled to the two-level reduction because the Sentencing Commission made that retroactive. So when we're done here, however the court rules, he will go back before the district court and he will say, I'm entitled to a two-level reduction. That will then reduce – But I don't think that's right. Isn't it true that under the law of this circuit, we can affirm this sentence, we can affirm the alternate sentence on the 3553A and never even consider or talk about the guideline issues? Isn't that correct? Are you not aware of – are you aware of Savignon-Mattoot and the Hargrove decision? Yes, Ron, and it has – there's two points that have to be made for Savignon-Mattoot. One is that if the court would have reached the second – the same decision. But the second says that the termination would be reasonable even if the guidelines issue was different. And we were submitting that this sentence is not reasonable given the fact that it is disproportionate to the other defendant's sentence. So your attack on the alternate sentence is the lack of proportionality? Right. That's the only attack you have on that sentence? Yes. Well, in that case, you have Wells who rendered extraordinary cooperation and the government contended they couldn't prove anything except some purchase of marijuana against Thompson. Your guy was not Lily White. He has convictions for money laundering and other crimes as well. Yes. So aren't those legitimate reasons to overcome any disparity claim? I don't think so because, number one, Mr. Wells got a seven-level reduction. It's just a huge – and obviously, I don't know, the court doesn't know what level of cooperation he had. But the government very frequently in these types of cases does what they did in this case, and that is make a deal with the big man and get the little guys. I have a quote in the record that says – the government says it's extraordinary cooperation by Wells. Again, we don't know – that's their interpretation of what it is. I don't know what that amounts to. But I do know that Mr. Wells was very high up on the drug distribution, maybe as many as 3,000 pounds of marijuana that he distributed. That's a lot of marijuana, and the seven-level reduction is pretty significant. Mr. Thompson – essentially, Mr. Thompson, who had a – he originally had a criminal history category of three, whereas Mr. Pearson only has a criminal history category of one. Mr. Thompson's was reduced to level two, but still, he had a more serious criminal record than Mr. Pearson. And he managed to plead guilty to 10 to 20 kilograms, but that's not what the evidence showed at the sentencing hearing. The government says it didn't have the evidence against Mr. Thompson, but they did if you read the sentencing hearing. Because Mr. Wells – not the sentencing hearing, but the quantity hearing, for lack of a better term. Mr. Wells testified that he made approximately 20 shipments of marijuana to Mr. Thompson, and each shipment was between 10 and 20 pounds. So we have – doing the math, it's between 200 and 400 pounds of marijuana that Mr. Thompson, according to Mr. Wells, would be responsible for. He only pledged 10 to 20 kilograms, but the government can't very well say that they didn't have the evidence against Mr. Thompson because they did. They had Mr. Wells' testimony and the bank records and so forth. What do you think the district court did wrong on proportionality? At 490 of the transcript, the judge spent, starting there, about two, two and a half pages roughly talking about it. Talking about what was the appropriate sentence and about the issue of substantial assistance. You know, the judge didn't make that up. That's in the guidelines. And so what – do you think she didn't consider proportionality, or do you just think her result was wrong after consideration? I think it was arbitrary. I think that – So would you think she considered proportionality? She – just the result that she came to was wrong? It was arbitrary, yes. She considered it a little bit. I don't think she gave full consideration because she didn't consider the fact that Mr. Thompson was responsible for as much marijuana as was Mr. Pearson. She didn't consider the role of Mr. Thompson in bringing other individuals into the conspiracy. She didn't consider the fact that Mr. Thompson basically arranged the money laundering. She didn't consider the fact that Mr. Thompson corrupted the postal official to allow the marijuana to be shipped through the United States Post Office. So I don't think she really fully considered the proportionality. She didn't really fully consider the degree of culpability. But that's a fairly thorough discussion of proportionality in his sentence relating to other people. To spend two and a half pages in a transcript, oftentimes we just see a passing paragraph. I've considered other folks, but they pled guilty earlier than your client did, and I have to go based on what is in the record that I can see. That's all that you would get. But I think she did not consider certain things. And in terms of the timing, there are two things about the timing. One, the government says it declined to give the third-level reduction because the defendant filed motions. Mr. Pearson filed a motion. Look, the motions were meritorious. The government violated Mr. Pearson's rights. He stood on those rights, and he convinced the court of the merit of his position. I don't think the government can validly claim that that is a reason for either reducing the third-level reduction or under Section 3553 to somehow – Well, but meritorious or not, I guess the larger issue is whether or not he accepted responsibility in a timely manner such that the government was relieved of the duty or responsibility to prepare for trial. And it may have been that the motions were meritorious, but how does that implicate that issue? Because – well, the fact that there were two indictments here. The government goes back to the first indictment and uses that as the beginning of its timeframe. What's wrong with that? I mean the offenses – the conduct for the most part didn't change. It was a different – when the superseding indictment came down, it was a different ballgame. The government changed its strategy. Instead of going to trial with Mr. Wells and Mr. Thompson, they cut a deal with Mr. Wells. Now, Mr. Wells is out of the picture, and they bring in Mr. Thompson. That's a totally different indictment, and it's a totally different strategic decision for Mr. Pearson to make. He could very well consider that once Mr. Wells is out of the case and is now a government witness, that at that point he makes the tactical decision to plead guilty. Well, that's all well and good, but it doesn't change the fact that he did not accept responsibility at the very beginning of the case or as close to it as – But in terms of allocating resources, when the government – there was a trial date in the initial indictment. The government vacated that, didn't want to go forward with that because they wanted to make a deal with Mr. Wells. Mr. Pearson had nothing to do with that. They then returned the superseding indictment. At that arraignment, the trial judge, as they frequently do for speedy trial concerns, sets a trial date to preserve the trial date. Then on August 2nd, Mr. Thompson pleads guilty. And now prior to August 2nd, the government had to set aside the time for the trial anyway because Mr. Thompson was in the case also. The only time that Mr. Pearson is responsible, for lack of a better word, the only time that he is responsible for the allocation of resources, the fact that that trial date was set and nothing else would be set on that time. The only time that is from Mr. Thompson's plea on August 2nd to the time that Mr. Pearson told the government that, yes, I want to plead to, that was August 19th. That's 17 days. The government – Let me ask this much. Didn't under 3553A, the district judge sentence your client to less time than the range would have been and the bottom of the range had he gotten the extra point? That's right. That's right. He would have done that. But again, the starting point would be lower. And as I say, after – So he was looking – if you won the argument, if it mattered, and you won the argument on the extra point, the range I think would be 46 to 57 months. That would be correct. She sentenced him under 3553A to 36 months and said that's what she thought the appropriate sentence was under any circumstances. That's right. But if the sentencing guidelines mean anything, they do mean as a starting point. And I think you can look at that sentence as the judge saw the original guideline range would be 51 to 63 months, and she departed from that downward by a matter of 15 months. If you reduce that another – by another level down to 46 to 57 months, she reduces it then – she would reduce it proportionately 15 months. As I say again, when we go back to the district court, that sentencing guideline range is going to be lower. Now, they will be lower for Mr. Wells and Mr. Thompson too. But then again, they may get a reduction that the judge may want to sentence them to the bottom end of the range of the new guideline range with the additional retroactive two-level reduction. But if the guidelines mean anything, they mean they're a starting point. And if the starting point is lower, then the resulting sentence should be lower. So I just wanted to – the government does not contend that they actually had to prepare for trial. In fact, in the sentencing letter, they gave a drop-dead date for the acceptance of the plea, and they say in that letter, after this time, we're going to have to prepare for trial. And the plea was accepted by the due date that was set by the government. So the only question is whether or not that trial date, the September 3rd trial date with a backup date of October 7th, somehow made the – made it inefficient to move forward with the case. And a couple of things, I think. Again, as I pointed out, before August 2nd, it didn't make any difference because – as far as Mr. Pearson goes, because they had to go to trial on that date for Mr. Thompson as well before he pled. But the fact that the court set a backup date, which tells me – I mean frequently courts do that. And the reason why they set up a backup date is because – Well, what would your – what do you think the calculation would be if you were entitled to that extra point? Do you think it would be other than 46 to – do you think the bottom of that – do you think the guideline range would not be 46 to 57 or whatever the number is? The guideline range would be that. But again, as a starting – guideline range is just starting point. I know that. So you think the judge then would look at a lower guideline range and maybe then send us lower? Would send it proportionately lower. I think the judge – But that's not what she said, though, is it? The defense counsel, I ask your honor, do I understand that the court's statement about the third level for acceptance to mean that if the Fourth Circuit were to determine that your ruling on the third level of acceptance was incorrect, which is what you're asking for, that you would nonetheless impose the same sentence? And the court said, that is correct. I thought about it. I would impose the same sentence. So she's already answered that question about what she had judged down proportionately. But I think the subsequent decision of the Guidelines Commission to lower those – basically, they're telling the courts that we consider these offenses that much less serious. But didn't your client waive the right to appeal in any sentence unless it was above 63 months? Well, he did reserve the right to challenge the one-level reduction. And if the court finds that it's – if the one-level reduction is – was wrongly denied, then the overall proportionality appropriateness of the sentence then comes into play. I say I'm almost out of my time. You've reserved time. Thank you. Thank you very much. Mr. Shea. Thank you, Your Honor. May it please the court, my name is Evan Shea, appearing on behalf of the United States. I want to focus on two main points this morning with the court. First is that from the defendant's initial indictment in February 2012 to the time he signed a plea agreement in August of 2013, the government expended resources to prepare for trial in a number of ways, but particularly in the litigation of a pretrial motion to suppress evidence filed by Mr. Pearson. And that, therefore, it was justified in withholding the third level – Why does that matter under the alternate sentence? Why is that even relevant? I know your answer – the question has been asked by the court. Why is that even relevant? Your Honor, that's my second point. Well, it's good to meet you. You leave with that point. Well, you're going to say first point is this, that, and the other. My second point is don't pay any attention to what I just said. Well, no, Your Honor, I think it's an important legal point that what the government – the government was appropriate in their withholding of the third level. But at the end of the day, you're absolutely right. This is – if there is any error here, which the government would submit there is not, it is one of the clearest cases of harmless error I think I've seen. The court, and this is at Joint Appendix 454, made it as clear as day that she would have imposed the same sentence had she awarded the third level for acceptance of responsibility. And Judge Shedd, as you pointed out, at Joint Appendix 489 to 492, Judge Blake very carefully went through each of the 3553A factors, assessed the facts of the case, and to the appellant's point, gave the appellant quite a substantial break based on the proportionality factor compared to the other two defendants. The government was asking for a sentence of 51 months, which was at the low end of the guideline range. And the court varied downward quite substantially from that to the sentence of 36 months. And as Judge Shedd, you pointed out, that would have been lower than the low end of the guideline range even had the one level been awarded. So I think that is, under any definition, a very reasonable sentence based on a very reasonable, thoughtful interpretation of the 3553A factors and the facts of the case. But to go back to the point of – Isn't that – and I think Judge Floyd made this point that if, in fact, as Judge Blake indicated, she assumed a mistake was made, came to the same result, at that point, the case ends because of the waiver with respect to the sentencing issues. Isn't that right? That's right, Your Honor. And this was the second section of our brief made it clear that the only way that the court should get to the reasonableness of the sentence, it's really kind of a several-step process. It must first find that the court was in error in not compelling the government to award the third level. Then it must find that the district court would have imposed the same sentence regardless. And then under the second prong of salvia matut, then it would assess whether the sentence that the judge would have awarded anyway was reasonable. So, in a sense, if the appellant gets through all of those three steps, he has reserved the right to argue in that context the reasonableness of the sentence. But in any other context, he certainly can't come to the court and say, please review my sentence because he's waived that in the plea agreement. To get back to the rule – the guideline section 3E1.1 withholding, the government – You can take it that we've read your brief. I'll take it that you'll just rest on the rest of your arguments in this case. Yes, Your Honor. We would. Any further questions? Unless there are any further questions from the court. Thank you very much. Thank you. You made your points, haven't you, on the sentencing being reasonable? We have, Your Honor. Yes. Thank you. Thank you very much. Thank you. Mr. Jankowski, you have five minutes. Yes, Your Honor. Thank you. Your Honor, this salvia matut case, I mean there are two prongs there. One is – and both prongs have to be met. One is that the district court would have reached the same result, which is what Your Honor was talking about. And the second is the determination that the sentence would be reasonable. And we're submitting that that sentence was not reasonable simply because it was disproportional. The various factors that we talked about in the brief and in my initial argument say that the bottom guy, the guy who's least responsible, is the guy with the harshest sentence. And that is – That happens sometimes, doesn't it? And isn't that sometimes the function of the guidelines themselves and the guideline sentencing? That the mules and the people way down, they're still listening to the boss. I'm not saying this particular case, who's saying keep your mouth shut. And then who – guess what? The boss is working a deal with the government. And then the boss gets the credit, and the boss knows more than the mules. And so at that point, the mules don't have anything to add, doesn't it? That's just a function of – isn't that a function of the guidelines and how it works? If I may wax philosophical for just a little bit. Well, you want to answer realistically first. Isn't that what happens? That is what happens, but that is not what should happen. The sentencing guidelines were designed to eliminate or reduce discretion. They really haven't done that. All they've done is move the discretion. The discretion is constant, and what the sentencing guidelines have done is take the discretion away from the judicial branch and move it to the executive branch. 3553 takes some of that discretion back. And it says to the court that when you sentence a defendant, that the sentence, among other things, has to be proportional to what the defendant did, notwithstanding what the guideline calculation is. And for that reason, I think that this sentence in this case was arbitrary, that it did not adequately reflect the relative culpabilities of the individual. The other harshness of this sentence is the forfeiture provision. Mr. Pearson, although he's low down on the list, is the one who's going to be – take the brunt of the forfeiture. I believe the government's asking for a $600,000 forfeiture in this case. They found, I believe, $115,000 in his home, which is clearly drug money. But there was $45,000 in bank accounts, some of which he got from a real estate settlement when he sold his mother's house. That was all seized, and that's gone. I believe they got $45,000 from Mr. Wells and nothing from Mr. Thompson. Mr. Wells and Mr. Thompson are foreign nationals, so they're going to be deported as soon as they finish their sentence. So they're not going to get any – all three of the defendants are jointly severally liable for that $600,000. The government realistically is not going to get anything from either Mr. Thompson or Mr. Wells because they're going to be on the jurisdiction of the United States. So when Mr. Pearson then gets out of jail, he is going to be responsible for that $600,000 all by himself, even though he was the guy who was the least responsible for it. And I will say to the court that that was the reason – that was the holdup on the plea as long as it was. Mr. Pearson didn't really care about – I mean, he cared about it, but he didn't – the problem was not admitting his guilt. He was always willing to admit his guilt. He thought it patently unfair for him to be responsible for all of the drug money that this conspiracy got when he basically got, relatively speaking, very little of it. So unless there are any other questions by the court, I would just submit on what has been said. All right. Thank you very much. Before we step down to Greek counsel, I'll just note, Mr. Jankowski, that you're court-appointed, and we acknowledge that and thank you for your service. We'll step down to Greek counsel and go directly to the next case.
judges: Dennis W. Shedd, Albert Diaz, Henry F. Floyd